UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ANTHONY PHILLIPS, Individually,
and ELAINE PHILLIPS, Individually.

                           Plaintiff,

        -against-

THE CITY OF NEW YORK and THE POLICE
DEPARTMENT OF THE CITY OF NEW YORK;
P.O. JAMES HAVILAND, whose shield number
is 29414; P.O. MARLON ROWE, whose shield
number is 18962; JOHN DOE, RICHARDE ROE,
SAMUEL WOE and others whose true names and
shield numbers are presently unknown.

                        Defendants.
-------------------------------------------------------------X

**CV No. 06 3243**

**COMPLAINT**   GIFTON, J.

**JURY TRIAL DEMANDED** REYES, M.J

*(court stamp: RECEIVED IN PRO SE OFFICE, U.S. DISTRICT COURT E.D.N.Y. JUN 30 2006 BROOKLYN OFFICE)*

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiff, ANTHONY PHILLIPS, seeks relief for the defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and of rights secured by the Fourth Eighth and Fourteenth Amendments to the United States Constitution, and of rights secured under the laws and Constitution of the State of New York.

2.    The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs, interests and attorney's fees, and such other and further relief as this court deems equitable and just. Plaintiff ELAINE PHILLIPS seeks relief for loss of consortium and valuable services to her as a result of injuries sustained by Plaintiff ANTHONY PHILLIPS.

## JURISDICTION

3.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

4.     Plaintiff's claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

5.     The plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

6.     The plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

7.     Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (a), (b), and (c).

## PARTIES

8.     The plaintiff, ANTHONY PHILLIPS, is a citizen and resident of the United States, and was, at all times relevant herein, a resident of the Borough of Brooklyn, City of New York, and State of New York.

9.     The plaintiff, ELAINE PHILLIPS, is a citizen and resident of the United States and was, at all times relevant herein, a resident of the Borough of Brooklyn, City of New York, and State of New York.

10.    Defendant NEW YORK CITY POLICE OFFICER JAMES HAVILAND is and

2

was at all times relevant herein an officer, employee and agent of the NEW YORK CITY POLICE DEPARTMENT, a municipal agency of THE CITY OF NEW YORK.  Defendant POLICE OFFICER HAVILAND is sued individually and in his official capacities.

11.     Defendant NEW YORK CITY POLICE OFFICER MARLON ROWE is and was at all times relevant herein an officer, employee and agent of the NEW YORK CITY POLICE DEPARTMENT, a municipal agency of THE CITY OF NEW YORK.  Defendant POLICE OFFICER ROWE is sued individually and in his official capacities.

12.     Defendant CITY OF NEW YORK is and was at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York.  It is authorized under by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by members of the NEW YORK CITY POLICE DEPARTMENT.

13.     Defendant NEW YORK CITY POLICE DEPARTMENT is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to carry out all police functions for the defendant CITY OF NEW YORK and assumes the risks incidental to the maintenance of its police force and the employment of police officers.

14.     At all times relevant herein, the individual defendants herein were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NEW YORK CITY POLICE DEPARTMENT and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the

3

course of their duties. They were acting for and on behalf of the NEW YORK CITY POLICE

DEPARTMENT at all times relevant herein with the power and authority vested in them as

officers, agents and employees of the NEW YORK CITY POLICE DEPARTMENT and

incidental to the lawful pursuit of their duties as officers, employees and agents of the NEW

YORK CITY POLICE DEPARTMENT.

### STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

15.     On October 5, 2005, at approximately 5:00 p.m., plaintiff ANTHONY PHILLIPS

and others were on a basketball court in Marine Park at 31st Street and Fillmore Avenue, in the

County of Kings, City and State of New York.

16.     Plaintiff ANTHONY PHILLIPS was sitting, waiting his turn to play, when a verbal

dispute arose between 2 players on the court. Plaintiff and others interceded, after which both

players shook hands and recommenced playing.

17.     Very shortly after the recommencement of play, defendant P.O. JAMES

HAVILAND approached the plaintiff and other players on the court using profanities.

18.     Plaintiff and other persons on the court told P.O. HAVILAND "that's not the way

you talk to grown men, we're old enough to be your father."

19.     Plaintiff went back to his chair, play resumed between others on the court, and

very shortly thereafter additional officers arrived in about 8 police vehicles.

20.     One of the players was forcibly assaulted by one of the approaching officers and

knocked to the ground hitting his head on the concrete. When plaintiff ANTHONY PHILLIPS

asked what did you do that for, defendant P.O. HAVILAND asked plaintiff to produce his

identification.

4

21.    When plaintiff stuck out his hand to give P.O. HAVILAND his identification, he was surrounded by 8 to 12 officers and knocked to the ground. While on the ground, plaintiff ANTHONY PHILLIPS was stomped in the neck, back, and spine. He was also hit with a baton and maced. Defendant P.O. ROWE jumped in the air coming down between plaintiff's neck and back with his knee cap. Other officers were hitting and kicking plaintiff on other parts of his body.

22.    Upon information and belief, plaintiff posed no threat to any police officer.

23.    Upon information and belief, plaintiff posed no threat to any citizens, nor had he committed any crimes.

24.    All of the above was done in violation of state and federal law.

25.    POLICE OFFICERS HAVILAND, ROWE, and others, whose names and shield numbers are presently unavailable, employed unnecessary and unreasonable force against plaintiff.

26.    While at the precinct, POLICE OFFICERS HAVILAND, ROWE, and others whose names and shield numbers are presently unknown denied plaintiff medical treatment, causing him to undergo further pain and suffering.

27.    Plaintiff ANTHONY PHILLIPS, who has been employed with the New York City Transit Authority for 18 years, with no prior arrests, has been unable to work since he was assaulted by said officers on October 5, 2005. The Kings County District Attorney's office declined to prosecute plaintiff and he was released without being arraigned, but after spending a night in jail.

28.    The conduct of the defendant police officers in assaulting plaintiff and denying him medical attention directly and proximately caused serious physical and emotional injury, pain and

5

suffering, mental anguish, humiliation and embarrassment.

29.    The arrest of plaintiff was accomplished with the intentional use of excessive force. The defendant police officers acted with reckless and wanton disregard for the rights, health and safety of the plaintiff.

30.    As a direct result of the acts alleged herein, the plaintiff has suffered severe physical injury and pain, severe mental pain and anguish, and severe emotional distress. He has suffered head injuries, knee and back injuries, and the inability to function in a normal manner. All of the events complained of above have left permanent emotional scars that plaintiff will carry with him for the remainder of his life.

31.    As a result of Plaintiff ANTHONY PHILLIPS's injuries, he was unable to perform valuable services that he previously performed for his wife, Plaintiff ELAINE PHILLIPS.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

32.    The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 31 as if fully set forth herein.

33.    The conduct and actions of defendant POLICE OFFICER JAMES HAVILAND, acting under color of law, in deliberately punching and kicking plaintiff, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious bodily harm, pain and suffering in violation of

6

plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and

Fourteenth Amendments to the United States Constitution.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER EIGHTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

34.    The plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 33 as if fully set forth herein.

35.    The conduct and actions of defendant POLICE OFFICER ROWE, acting under

color of law and under his authority as a New York City Police Officer, in deliberately punching

and kicking plaintiff, was done intentionally, maliciously, with a deliberate indifference and/or

with a reckless disregard for the natural and probable consequences of his acts, was done without

lawful justification, and was designed to and did cause specific and serious bodily harm, pain and

suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983,

and the Eighth and Fourteenth Amendments to the United States Constitution.

## THIRD CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

36.    The plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 35 as if fully set forth herein.

37.    The conduct and actions of defendant POLICE OFFICER JOHN DOE, acting

under color of law, in deliberately punching and kicking plaintiff, was done intentionally,

7

maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and

probable consequences of his acts, was done without lawful justification or reason, and was

designed to and did cause specific and serious bodily harm, pain and suffering in violation of

plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and

Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

38.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 37 as if fully set forth herein.

39.     The conduct of defendant POLICE OFFICER RICHARD ROE, acting under

color of law, in deliberately punching and kicking plaintiff, was done intentionally, maliciously,

with a deliberate indifference and/or with a reckless disregard for the natural and probable

consequences of his acts, was done without lawful justification or reason, and was designed to

and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's

Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth

Amendments to the United States Constitution.

## FIFTH CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983

40.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 39 as if fully set forth herein.

41.     The conduct and actions of defendant POLICE OFFICER SAMUEL WOE, acting

under color of law, in deliberately punching and kicking plaintiff, was done intentionally,

maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and

probable consequences of his acts, was done without lawful justification or reason, and was

designed to and did cause specific and serious bodily harm, pain and suffering in violation of

plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and

Fourteenth Amendments to the United States Constitution.


### SIXTH CLAIM

### LIABILITY OF DEFENDANTS THE CITY OF NEW YORK AND
### NEW YORK CITY POLICE DEPARTMENT FOR
### CONSTITUTIONAL VIOLATIONS

42.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1

through 41 as if fully set forth herein.

43.     At all times material to this complaint, the defendant THE CITY OF NEW YORK,

acting through its police department, NEW YORK CITY POLICE DEPARTMENT, had in effect

de facto policies, practices, customs and usages that were a direct and proximate cause of the

unconstitutional conduct of the defendant police officers, and of the resultant official cover-up of

the wrong and unconstitutional conduct of these officers.

44.     These policies, practices, customs and usages include, inter alia: (a) the failure to

properly screen, supervise, discipline, transfer, counsel and/or otherwise control police officers

engaged in the excessive and unjustified use of force, particularly those police officers who are

repeatedly accused of such acts including, on information and belief, the police officer defendants

herein; (b) the police code of silence wherein police officers regularly cover up police use of excessive and unjustified force by telling false and incomplete stories, inter alia, in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau, and in public statements, all of which are designed to cover for and/or falsely exonerate the accused police officers.

45.     The policy, practice, custom and usage of failing to screen, discipline, supervise, counsel, transfer and/or control police officers, is evidenced, inter alia, by the following:

a.     Out of the total number of allegations of police misconduct of all types made to the CCRB, excessive force allegations remained steady at 40 percent in 1995 and 1996 (compared to the 1991-1992 period). The absolute number of allegations of excessive force, however, increased by 2000 between the two periods. Civilian Complaint Review Board Semi-Annual Reports, Vols. I-III.

b.     The CCRB (newly constituted as a civilian, rather than police, agency in July 1993), substantiated only 3.4 percent of the complaints it received from July 1993 through the end of 1995, a rate well below that of other major cities. Of the 12,740 complaints received by the CCRB during that period, only 27 percent received what the CCRB characterizes as a "full review." Of the 10,611 complaint files closed out by the CCRB during that period, only 8 percent were closed based upon an investigative record that was even sufficient to support a finding as to whether or not misconduct had occurred. Id.

c.     The CCRB has recommended some form of discipline in only 1.8 percent of the cases which it disposed of from July 1993 to December 1995 (i.e., 193 recommendations of discipline out of 10,611 complaints disposed of). There were an additional 238 cases in which the

10

CCRB found that the complaints were substantiated, but in which it made no recommendation of discipline to the police department. The corresponding rate of CCRB discipline recommendation for the first six months of 1996 was only half the rate of the previous two and a half years, 0.9 percent (26 recommendations of discipline out of 2,899 complaints disposed of), with an additional 124 cases in which the CCRB made no recommendation of discipline on substantiated complaints. Id.

       d.     In 1995, the NEW YORK CITY POLICE DEPARTMENT disposed of 61 cases in which charges and specifications had been filed by the CCRB. Of those, 7 resulted in guilty verdicts after departmental trials, 11 resulted in acquittals, and 43 were dismissed because the statute of limitations had expired. Id.

       e.     The fact that of the complaints that are substantiated by the CCRB, most do not result in any kind of meaningful discipline. For instance, as of November 14, 1991, of the 81 officers who faced departmental trials in 1991, 47 were cleared, and 34 were disciplined with penalties ranging from loss of vacation to a 90-day suspension.

       f.     The fact that in 1988 only six police officers were fired for brutality, that in 1989 only four police officers were fired for brutality, that in 1990 only one officer was fired for brutality, and that in 1991, as of November 13, 1991, no officer had been fired for brutality. These figures are in stark contrast to an increase in the number of court cases filed for brutality, which increased 50% from 1986 to 1990, from 1,027 annually to 1, 558 annually.

       g.     Damages have been awarded to victims of police misconduct in between 300-400 cases annually since 1988, as a result of out-of-court settlements or judgments in civil actions. The money paid out by the city in damages to alleged victims of police misconduct has

risen from approximately $7 million in 1988, to $13.5 million in 1992, to $24 million in 1994. More than $82 Million was paid in damages to victims of police misconduct in 1352 cases between 1992 and 1995.

      h.    Since at least 1984, the defendant THE CITY OF NEW YORK and the defendant NEW YORK CITY POLICE DEPARTMENT have been on notice that their training of police officers has been inadequate and that police officers joining the force, including, on information and belief, individual defendant police officers herein, were disproportionately in involved in misconduct and abuse, particularly involving excessive force and brutality.  See, e.g., Mayor's Advisory Committee on Police Management and Personnel Policy, Final Report, February 24, 1987.

      i.    The fact that the City of New York Office of the Comptroller, in an unpublished report, found that the police often do in adequate investigations and have little training to prevent officers from repeatedly using excessive force.

      j.    The fact that in 1990 the Office of Special Prosecutor, which investigated charges of police corruption, was abolished.

      k.    The fact that in the vast majority, if not all, of the excessive force, deadly force, and other police abuse cases that result in verdicts or substantial settlements for the victims, the defendant NEW YORK CITY POLICE DEPARTMENT imposes no discipline, either before or after Court resolution, almost never reopens an investigation previously conducted after such a resolution, and sometimes promotes the abusive officer to a position of greater authority despite the resolution.

      l.    The Commission Report of the Commission to Investigate Allegations of

Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen

Commission Report"), dated July 7, 1994, states:

> As important as the possible extent of brutality, is the extent of brutality
> tolerance we found throughout the Department.  While the tolerance for
> brutality arises from the same set of police attitudes as the tolerance for
> corruption, there is an important difference.  Unlike serious corruption, which
> most cops outwardly tolerate but inwardly deplore and resent, officers seem
> fairly tolerant -- both outwardly and inwardly -- of occasional police brutality,
> . . . many do not seem to believe that anything is really wrong with a few blows
> and bruises now and then.  Even officers who would never take a free cup of
> coffee, seem to tolerate what they believe is a little "street justice."  An
> excessive use of fists to face, nightsticks to ribs, and knees to groin are seen
> as the realities of policing.

> . . . If officers have to chase, wrestle or struggle with someone to affect
> an arrest, they become angry.  It is hard to resist force in those circumstances,
> as we understandably have been told time and time again.  . . . Police need to show
> who is boss in crime-ridden neighborhoods, is often the attitude.  They view
> unnecessary force as a means to this end.  The law is made by ivory tower
> legislators; law enforcement is achieved by those who know the streets we
> were told.

Mollen Commission Report, p. 49.

46.     The policy, practice and custom of a code of silence is evidenced, inter alia, by the

following:

> a.     The Mollen Commission Report states:

> Officers are often even more reluctant to report or discuss brutality than
> corruption perhaps because they view it as a reality of policing . . .

> . . . honest and corrupt officers alike have reported that the wall of
> silence is even stronger when it comes to brutality.  Officers are unwilling to
> go out on a limb and report behavior that they believe, while unlawful, is
> fundamentally correct.

> Officers are not the only ones who tolerate brutality.  This tolerance,
> or willful blindness, extends to supervisors as well.  This is because many
> supervisors share the perception that nothing is really wrong with a bit of

13

> unnecessary force and because they believe that this is the only way to fight crime today . . .
>
> In past years, the Department has refused to recognize brutality as a serious occupational hazard and failed to recognize its link to corruption. Integrity training inadequately addresses issues of brutality or brutality tolerance; intelligence-gathering efforts in the brutality area were negligible; discipline was lax; command accountability was rarely enforced in this area; and information on corruption and brutality was rarely analyzed together.

Mollen Commission Report, p. 49-50; see also Chapter 3, pp. 53-58, "The Code of Silence."

b.   The fact that in none of the approximately 8,000 complaints reviewed by the CCRB in 1987 and 1988 did any police officer provide evidence in support of a complainant.

c.   The fact that in the CCRB's investigations of police efforts to enforce a curfew in Tomkins Square Park on August 6 and 7, 1998, which resulted in 121 complaints against police officers, alleging 143 acts of police misconduct, mostly involving excessive force, the NEW YORK CITY POLICE DEPARTMENT was unable to identify even one officer who was responsible.

d.   The fact that New York County District Attorney Robert Morgenthau has been quoted as acknowledging that in the NEW YORK CITY POLICE DEPARTMENT there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully.

e.   The fact that in 1985 former Police Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the police department.

f.   The fact that Anthony Bouza, Former Bronx Borough Commander for the NEW YORK CITY POLICE DEPARTMENT, acknowledged the existence of a "code of

silence" in the police department and described it as "unbelievably powerful." In fact, Bouza has stated that "[i]n New York the police code of silence is stronger than the Mafia's code of omerta."

        g.     Former New York City Police Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

47.     On information and belief, the defendants THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT failed to effectively screen, hire, train, supervise and discipline their police officers, including the defendant police officers herein, for their propensity for violence, including excessive and unjustified force and restraint, for racial bias, lack of truthfulness, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers to be in a position to assault and/or excessively and unjustifiably restrain the plaintiff, refuse him medical treatment for a serious medical need, and to otherwise cause him injury and violate his federal and state constitutional rights, and/or to permit these actions to take place with their knowledge or consent.

48.     On information and belief, the defendant police officers herein have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to the defendants THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT that the defendant police officers herein where likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.

49.     On information and belief, the defendants THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT maintained an inadequate structure for risk containment

15

and stress management relative to its police officers, and failed to create proper means of containing such risk and managing such stress. Inter alia, the structure was deficient, at the time of selection of police officers and thereafter during their employment, in its ability to evaluate and exchange information within the command structure about the performance of individual police officers; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer; and in its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The effect of this was to permit police officers of the NEW YORK CITY POLICE DEPARTMENT to function at levels of significant and substantial risk to the public in general.

50.    As a result of the foregoing conscious policies, practices, customs and/or usages, defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT have permitted and allowed the employment and retention of individuals as police officer whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent or racially motivated behavior. Such polices, practices, customs, and/or usages are a direct and proximate cause of the conduct alleged herein and other wise a direct and proximate cause of the injuries to the plaintiff herein.

51.    As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, the plaintiff has suffered permanent physical, mental anguish, suffering, humiliation and embarrassment.

## SEVENTH CLAIM

16

## RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND NEW YORK CITY POLICE DEPARTMENT FOR STATE LAW VIOLATIONS

52.   The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

53.   The conduct of defendant POLICE OFFICERS HAVILAND and ROWE, and others whose true names and shield numbers are presently unknown, alleged herein, occurred while they were on duty an in uniform, and in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of the defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT, and as a result the defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT are liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

### EIGHTH CLAIM

### ASSAULT AND BATTERY

54.   The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

55.   By the actions described above, defendants HAVILAND and ROWE, and other police officers whose true names and shield numbers are not presently known, did inflict assault and battery upon plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by his laws and Constitution of the State of New York.

17

56     As a result of the foregoing, plaintiff sustained painful permanent injuries to his body and was made ill.

## NINETH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 56as if fully set forth herein.

58     By the actions described above, defendants HAVILAND and ROWE, and other police officers whose true names and shield numbers are presently unknown, engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

59     As a result of the foregoing, plaintiff was made ill, was subjected to great humiliation, and was otherwise damaged and injured.

## TENTH CLAIM

### NEGLIGENCE

60.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 59 as if full set forth herein.

61.     The defendants, jointly and severally, negligently caused severe physical injuries, denied medical treatment, and caused extreme emotional distress to plaintiff. The acts and

18

conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed him by the laws and Constitution of the State of New York.

62.     As a result of the foregoing, plaintiff sustained permanent painful injuries, was made ill, was subjected to great humiliation and emotional distress, was deprived of liberty and detained, and was otherwise damaged and injured.

## ELEVENTH CLAIM

### LOSS OF CONSORTIUM

63.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 62 as if fully set forth herein.

64.     By the actions described above, resulting in plaintiff ANTHONY PHILLIPS sustaining injuries over various parts of his body, he is no longer able to provide the services previously rendered to his legal guardian and grandmother, plaintiff ELAINE PHILLIPS, resulting in her loss of consortium.

19

WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

a.     Compensatory damages;

b.     Punitive damages;

c.     The convening and empanelling of a jury to consider the merits of the claims herein;

d.     Costs and interest and attorney's fees;

e.     Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

DATED:     Brooklyn, New York
           June 15, 2006

 

MICHAEL W. WARREN (MW-1187)
MICHAEL W. WARREN, P.C.
580 Washington Avenue
Brooklyn, New York 11238
(718) 230-9790

Attorney for Plaintiffs
ANTHONY PHILLIPS
ELAINE PHILLIPS

20